IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NATIONS TITLE AGENCY OF KANSAS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 5:13-cv-1175-W-DGK |
| CHAD A. SLOAT, et. al., | ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

This interpleader action involves a dispute over $10,000 located in an escrow account. Plaintiff Nations Title Agency of Kansas ("NTA"), the escrow agent overseeing the funds, alleges that multiple claimants are requesting the money. Accordingly, pursuant to 28 U.S.C. § 1331 and Federal Rule of Civil Procedure 22, NTA filed this interpleader action against Defendant-Claimants Chad A. Sloat ("Sloat"), Beyond Medicine, LLC ("Beyond Medicine"), Nicole Tice ("Tice"), the United States of America (the "Government"), the Lawrence E. Winder Trust (the "Winder Trust"), and Lawrence and Nila Winder (collectively the "Winders").

Now before the Court is the Government's "Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) and Motion for Judgment on the Pleadings Pursuant to Rule 12(c)" (Doc. 15). For the reasons discussed below, the motion is DENIED WITHOUT PREJUDICE.

**Factual and Procedural Background**

The Court obtained the following facts from NTA's complaint (the "Complaint") (Doc. 1), the documents attached to it, and available public court documents. On February 22, 2012, a grand jury empaneled in the United States District Court for the Western District of North Carolina indicted Sloat and several other individuals for various federal offenses related to an

alleged Ponzi scheme. Besides alleging several federal statutory violations, the indictment also included an allegation of forfeiture pursuant to 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c). The forfeiture allegation sought approximately $40,000,000, which represented the criminal defendants' alleged proceeds from the Ponzi scheme. In October 2012, Sloat pled guilty to one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and he consented to the forfeiture allegation.

Around six months later, Tice agreed to buy a home in Parkville, Missouri, from the Winder Trust. The purchase contract for the home required Tice to provide a $10,000 escrow deposit, so the parties retained NTA to oversee the funds. Tice then sent NTA a $10,000 cashier's check which was purchased by Beyond Medicine, a company wholly owned by Sloat. Shortly before the closing on May 1, 2013, Tice informed NTA that she would not finalize the purchase. Under the purchase contract, if Tice defaulted, the Winder Trust could either retain the earnest money as liquidated damages or pursue another remedy. It is unclear from the Complaint whether the Winder Trust or the Winders invoked this clause. The Complaint, however, does allege that Tice requested NTA return the earnest money, but the Winders or the Winder Trust objected.

On August 6, 2013, the United States District Court for the Western District of North Carolina issued a restraining order which prohibited any party from transferring or distributing any funds belonging to Beyond Medicine. The order specified that certain property owned by Sloat was subject to forfeiture to satisfy the forfeiture allegation, that Sloat was the sole owner of Beyond Medicine, and that the Government was entitled to any property belonging to Beyond Medicine. Sometime between August 2013 and December 2013, NTA received the restraining order because the escrow funds purportedly came from Beyond Medicine.

On December 4, 2013, NTA filed this interpleader action requesting the Court determine the rightful owner of the escrow funds. According to the returns of service, NTA served the Government, Tice, the Winders, and the Winder Trust. However, there is no return of service indicating that NTA properly served Sloat or the designated representative of Beyond Medicine. To date, Tice and the Government are the only Defendant-Claimants to appear in this case. On January 29, 2014, Tice answered the Complaint and disclaimed all interest in the contested funds. Rather than file an answer on the required date, the Government filed the instant motion, requesting dismissal or judgment in its favor.

## Standard

**A. The standard of review for motions challenging the Court's subject-matter jurisdiction.**

Motions asserted pursuant to Rule 12(b)(1) challenge the court's power to adjudicate the claims before it. *Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952, 956 (E.D. Mo. 2007). If the court finds that jurisdiction is not present, it must dismiss the case. Fed. R. Civ. P. 12(h)(3). Where, as here, the court's jurisdiction is challenged based upon the face of the pleadings, the standard for determining the 12(b)(1) motion is the same as the standard for Rule 12(b)(6) motions. *Giandinoto*, 545 F. Supp. 2d at 956. Under Rule 12(b)(6), the court assumes that the factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Data Mfg. Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009).

**B. The standard of review for motions challenging the sufficiency of the pleadings.**

A court must dismiss a complaint if it fails to state a claim on which relief can be granted. Fed R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint ... does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action…." *Benton v. Merrill Lynch & Co., Inc.,* 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 (internal citations omitted)). A complaint that alleges only "naked assertion[s] devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## Discussion

The Government presents three separate but related arguments. First, the Government contends the Court must dismiss this lawsuit either for lack of subject-matter jurisdiction or because the Complaint fails to state a claim upon which relief can be granted. In the alternative, the Government argues that the undisputed facts entitle it to judgment on the pleadings. The Court addresses each argument below.

**A. The Court possesses subject-matter jurisdiction over this interpleader action.**

The Government first challenges the Court's authority to hear this interpleader action. Interpleader disputes in federal court take one of two forms: statutory interpleader under 28 U.S.C. § 1335 or rule interpleader pursuant to Federal Rule of Civil Procedure 22. The key distinction between the two forms is the basis for the court's jurisdiction. *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993). A federal court's subject-matter jurisdiction over statutory interpleader actions arises from the jurisdictional clause set forth in 28 U.S.C. § 1335, whereas its authority to adjudicate rule interpleader suits derives from the traditional jurisdictional grants of 28 U.S.C. § 1331 and § 1332. *Id.*

Citing to 28 U.S.C. § 1335, the Government asserts that the Complaint fails to satisfy the jurisdictional requirements set forth in the statute. A review of the Complaint, however, reveals

4

that NTA instituted a rule interpleader action, not a statutory interpleader action. The Complaint alleges that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the resolution of this action involves a substantial federal question, namely whether the escrow funds are subject to forfeiture under 18 U.S.C. § 981. Thus, the relevant inquiry is whether the Court possesses federal question jurisdiction over the instant dispute. The Court finds that it does.

Generally, federal question jurisdiction only exists when the plaintiff's cause of action arises under federal law. *Commercial Union Ins. Co.*, 999 F.2d at 585. In other words, a party typically may not stake a federal court's jurisdiction on an anticipated federal law defense. *Id.* But, a narrow exception to this general rule exists in interpleader actions. *Id.* Where the United States' entitlement to interpleader relief is based upon a federal statute which would confer federal question jurisdiction in a separate coercive action brought by the United States, the federal court also possesses subject-matter jurisdiction over the interpleader action. *See id.* ("Defendant United States based its claim to the fund on the FMCRA. Thus, federal question jurisdiction would have existed in a coercive action brought by the United States and thereby could have been alleged in this interpleader.").

Such is the case here. The Government contends that it is entitled to the funds because they are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as proceeds from the Ponzi scheme. This statutory provision entitles the United States to recover the proceeds derived from a defendant's violation of certain federal statutes, including the statutes and regulations proscribing securities fraud. 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A), 1961(1)(D). Federal courts have subject-matter jurisdiction over actions brought by the United States under this provision. *U.S. v. $6,190 in U.S. Currency*, 581 F.3d 881, 884-885 (9th Cir. 2009). Thus, the Government could attempt to obtain the escrow funds by bringing a separate civil action in federal court pursuant to 18 U.S.C. § 981. Since the Court could entertain a coercive action pursuant to 18 U.S.C. § 981,

5

it also has subject-matter jurisdiction over this interpleader action in which the Government's entitlement to relief is primarily premised on this same statute. *See Commercial Union Ins.*, 999 F.2d at 585.

   B. **The Complaint states a rule interpleader claim.**

The Government also contends NTA fails to state an interpleader claim because NTA has not offered evidence proving that it has a reasonable fear of multiple liability. This argument lacks merit.

To maintain a rule interpleader action, a plaintiff must demonstrate that it *may* be exposed to multiple liability due to the claims from several defendants. Fed. R. Civ. P. 22(a)(1) (emphasis added). The multiple liability requirement is not a strict one: the plaintiff must only demonstrate that it may be subjected to at least dual liability. *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357, 364 (8th Cir. 1966) (quoting *Pan Am. Fire & Cas. Co. v. Revere*, 188 F. Supp. 474, 480 (E.D. La. 1960) (J. Skelly Wright)). Here, Plaintiff meets this basic requirement. The Complaint states that Tice initially requested NTA return the escrow funds to her, the Winders or the Winder Trust objected to this request, and the Government subsequently informed NTA that the escrow funds were subject to forfeiture. This satisfies the multiple liability element.

Contrary to the Government's argument, this conclusion is not affected by NTA's failure to provide "evidence" supporting these allegations, or by Tice's disclaiming of the funds. Unlike the summary judgment stage, a plaintiff is not required to provide the court with evidence supporting its allegations at the 12(b)(6) stage. *Hicks v. Brown*, 929 F. Supp. 1184, 1187 (E.D. Ark. 1996) ("Fed. R. Civ. P. Rule 12(b)(6) is not a device for testing truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint."). Rather, it may merely rest upon the allegations in the complaint, which the court must accept as true. *See Data Mfg. Inc.*, 557 F.3d at 851. Here, despite Tice's disclamation, a fear of multiple

liability still remains because the Complaint alleges that the Government, the Winders, and/or the Winder Trust each possess a potentially valid claim to the escrow funds. While Tice's admission may ultimately assist the Government in obtaining relief as a matter of law, it does not warrant dismissal for failure to state a claim.

**C. Judgment on the pleadings is procedurally premature.**

As an alternative basis for relief, the Government contends that it is entitled to judgment on the pleadings. Relying on the forfeiture proceedings in the Western District of North Carolina and the related restraining order, the Government contends that its claim to the funds is superior to all other claimants.

The Court declines to address the merits of this argument because the Government's motion is procedurally improper. Judgment on the pleadings is only appropriate after closure of the pleadings. Fed. R. Civ. P. 12(c). Accordingly, a motion for judgment on the pleadings filed before the defendants have answered the complaint is premature, *Hailey v. Yellow Freight Sys., Inc.*, 599 F. Supp. 1332, 1333 (W.D. Mo. 1984), and the court may deny it as procedurally improper. *See State Farm Fire & Cas. Co. v. Spradling Home Inspections, LLC*, No. 10-CV-01887-NAB, 2011 WL 4056042, at *3 (E.D. Mo. Sept. 13, 2011) (citing *Doe v. United States*, 419 F.3d 1058, 1061-62 (9th Cir. 2005)).

Here, the Government filed the instant motion prior to filing an answer, thus making it premature. Moreover, ruling upon the Government's motion would also be imprudent given NTA's failure to file a return of service for Defendant-Claimants Sloat and Beyond Medicine. Without evidence of proper service and entry of default judgment against the unresponsive Defendant-Claimants, judgment on the pleadings is premature. *Cf. Trs. of the IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1144 (N.D. Cal. 2009) (entering a default judgment in an interpleader action when several of the alleged claimant-defendants failed to

appear in the case). Accordingly, the Court denies the Government's request for judgment on the pleadings, and orders NTA to show cause why the Court should not dismiss Sloat and Beyond Medicine for failure to prosecute. In lieu of showing cause, NTA may file a return of service evidencing that it properly served Sloat and Beyond Medicine. After proof of proper service and entry of default against, or dismissal of, the remaining Defendant-Claimants, the Government may renew its arguments for judgment as a matter of law in the procedurally proper manner. *See* Fed. R. Civ. P. 12(a)(4), 12(c), 56(a).

**Conclusion**

For the foregoing reasons, the Government's motion is DENIED WITHOUT PREJUDICE. Within fourteen days, NTA shall show cause why the Court should not dismiss Sloat and Beyond Medicine.

**IT IS SO ORDERED.**

Date:     August 1, 2014                         /s/ Greg Kays
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT